United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TARIQ KOHISTANI,
Plaintiff,
v.
KIKA SCOTT, et al.,
Defendants.

Case No. 4:25-cv-04315-KAW

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 27, 32

On March 16, 2026, Defendants filed a motion for summary judgment. (Defs.' Mot., Dkt. No. 27.) On April 23, 2026, Plaintiff filed an opposition and cross-motion for summary judgment. (Pl.'s Opp'n, Dkt. No. 32.)

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, DENIES Defendants' motion for summary judgment and GRANTS Plaintiff's cross-motion for summary judgment.

## I. BACKGROUND

### A. Factual Background

In August 2021, the Afghan government fell to the Taliban. (*See* Decl. of Tariq Kohistani, "Kohistani Decl.," Dkt. No. 32-1 ¶ 2.) Plaintiff feared for his life due to being a member of the Afghan military and Tajik ethnic group, and his beliefs in a democratically elected government. *Id.* On or around August 19, 2022, Plaintiff completed a U.S. Refugee Admission Program Priority-2 resettlement program application in response to the Taliban coming through his town in Kabul. (Kohistani Decl. ¶ 3.)

On August 20, 2022, Plaintiff went to the airport with his wife (Silsila Kohistani) and three

children (Hdisullah Kohistani, Bibi Hayat Kohistani, and Anas Kohistani) to leave Afghanistan. (Kohistani Decl. ¶¶ 1, 4.) Due to chaos at the airport, Plaintiff was separated from his family and was the only family member who was able to board a flight and depart Afghanistan. (Kohistani Decl. ¶ 4.) On August 27, 2022, Plaintiff arrived in Washington, D.C. (Kohistani Decl. ¶ 5.) On December 11, 2023, Plaintiff was granted asylum. (Kohistani Decl. ¶ 6.)

On February 1, 2024, Plaintiff submitted I-730 Petitions for Asylee Relatives for his spouse and children who remained in Afghanistan. (Kohistani Decl. ¶ 7.) Plaintiff's family continues to live in fear of the Taliban. *Id.* For instance, on three separate occasions after Plaintiff's departure, the Taliban searched Plaintiff's home and questioned Plaintiff's family about Plaintiff's whereabouts and locations of Plaintiff's weapon and military vehicle. *Id.* Consequently, Plaintiff's spouse, children, parents, and siblings moved an hour away to another part of Kabul. *Id.* Given the Taliban's strict gender apartheid rules relating to the roles of men and women in society, Plaintiff's wife cannot leave the apartment, and Plaintiff's male family members only leave the home with their faces covered for food and necessities. (Kohistani Decl. ¶ 8.)

On July 12, 2024, November 21, 2024, and December 3, 2024, Plaintiff submitted requests for expedited processing of the I-730 petitions to USCIS. (Kohistani Decl. ¶ 9.) On July 22, 2024, USCIS responded via email relating to Silsila's petition stating that it was received and that it would accommodate Plaintiff's request for expedited processing. (Kohistani Decl. ¶ 10.) On November 22, 2024, USCIS emailed in response to Anas's petition stating that Plaintiff's request for expedited processing was approved and it would receive a decision or notice of further action within 45 days. (Kohistani Decl. ¶ 11.) That same day, USCIS emailed in response to Hdisullah's petition and claimed that the petition did not merit expedited processing. *Id.* No response or decision was made regarding the request for expedited processing for Bibi Hayat's petition. *Id.*

Since those email communications, Plaintiff has heard nothing further from Defendants or USCIS. (Kohistani Decl. ¶ 12.) More than two years have passed since Plaintiff filed the I-730 petitions, and he has yet to receive a decision or update from Defendants as to what, if any, action has been taken. (Kohistani Decl. ¶ 13.) To date, Plaintiff's family continues to live in constant fear for their safety and well-being due to the Taliban rule. (Kohistani Decl. ¶ 14.) Plaintiff and

his family also cannot plan for their future, leaving them in a constant state of uncertainty, while they endure prolonged familial separation under the Taliban's dangerous and oppressive conditions. (Kohistani Decl. ¶ 15.) As such, Plaintiff and his family have been unable to live normal lives as they await adjudication of the I-730 petitions. *Id.*

### B. Procedural Background

On May 20, 2025, Plaintiff filed this lawsuit alleging two causes of action under the Mandamus Act and the Administrative Procedures Act and asks that the Court compel Defendants to adjudicate Plaintiff's I-730 Refugee Asylee Relative Petition for his spouse and minor children. (Compl., Dkt. No. 1; Prayer Compl. ¶ A.)

On March 16, 2026, Defendants filed a motion for summary judgment. (Defs.' Mot., Dkt. No. 27.) On April 23, 2026, Plaintiff filed an opposition and cross-motion for summary judgment. (Pl.'s Opp'n, Dkt. No. 32.) On May 7, 2026, Defendants filed a reply to their motion and an opposition to Plaintiff's cross-motion. (Defs.' Reply, Dkt. No. 36.) On May 12, 2026, Plaintiff filed a reply. (Pl.'s Reply, Dkt. No. 37.)

Additionally, Plaintiff filed a recent decision to bring to the Court's attention a relevant judicial opinion published after the date the opposition and reply were filed pursuant to Civil Local Rule 7-3(d)(2). (Dkt. No. 43.)

## II. LEGAL STANDARD

A party may move for summary judgment on a "claim or defense" or "part of... a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where

the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, it may discharge its burden of production by either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

## III. DISCUSSION

Before the Court are the parties' cross-motions for summary judgment. The Court will address their respective arguments below.

//

**A. The Court has subject matter jurisdiction**

Defendants move for summary judgment on the grounds that the Court lacks subject matter jurisdiction because the jurisdiction-stripping provision of the Immigration and Nationality Act ("INA") contained in 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of Plaintiff's pace of adjudication claim under the Administrative Procedures Act ("APA"). (Defs.' Mot. at 3.)

Generally, the APA "establishes a 'basic presumption of judicial review [for] one suffering legal wrong because of agency action.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16–17 (2020) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967)); *see also* 5 U.S.C. § 702. Where agency action is "unlawfully withheld or unreasonably delayed," the court "shall compel agency action." 5 U.S.C. § 706(1). This presumption can be rebutted by showing that the challenged "action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Regents*, 591 U.S. at 17. Section 701(a)(2)'s exception to reviewability is construed "quite narrowly." *Dep't of Com. v. New York*, 588 U.S. 752, 772, 139 S.Ct. 2551, 204 L.Ed.2d 978 (2019) (quoting *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23, 139 S.Ct. 361, 202 L.Ed.2d 269 (2018)).

Section 1252(a)(2)(B)(i) precludes judicial review of decisions pertaining to the adjustment of status of nonimmigrant to permanent legal residents pursuant to 8 U.S.C. § 1255. Section 1252(a)(2)(B)(ii), which is at issue here, precludes judicial review of "any other [discretionary] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security…."

As an initial matter, it is well established that there is a "presumption favoring judicial review of administrative action" under immigration statutes. *Kucana v. Holder*, 558 U.S. 233, 251 (2010). The presumption "can only be overcome by 'clear and convincing evidence' of congressional intent to preclude judicial review." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 222 (2020) (citations omitted).

Defendants correctly assert that the Supreme Court has held that courts may not review denials of relief, which are discretionary, under Section 1252(a)(2)(B)(ii). (Defs.' Mot. at 4-5

(citing *Patel v. Garland*, 596 U.S. 328, 338-39 (2022).) While Defendants tacitly acknowledge that neither the Supreme Court nor the Ninth Circuit have directly addressed whether the jurisdiction-stripping provision extends to pace of adjudication claims, they argue that other circuits have found that it does. *Id.* at 4-5. Other courts in this district have addressed those same arguments and Defendants' reliance on the same out-of-circuit cases and explained how they were factually inapposite. *See, e.g., Varniab v. Edlow*, No. 25-CV-10602-SVK, 2026 WL 485490, at *7-8 (N.D. Cal. Feb. 20, 2026) (The out-of-circuit cases involved "retrogression hold" policies, which involve a delay until one of a limited number of annual visas became available, rather than delaying final adjudication without a condition precedent.) The Court agrees with the *Varniab* court and declines to adopt the reasoning in the cited out-of-circuit cases.

Next, Defendants argue that the Form I-730's statutory authority treats applications from asylees differently than refugees, because only a refugee's application must be granted, whereas whether to grant an asylee's application is within the agency's discretion. (*See* Defs.' Mot. at 5.) This argument conflates the ability of the courts to review an application's pace of adjudication with the ability to review the application's final decision.

In opposition, Plaintiff confirms that he is not seeking to dictate the outcome of the I-730 Petitions, but that, as a granted asylee, he has a clear right to have them adjudicated. (Pl.'s Opp'n at 16.) While the Ninth Circuit has not directly addressed whether the jurisdiction-stripping provision applies to all pace of adjudication claims, courts in this district have overwhelmingly found that it does not. *See, e.g., Varniab v. Edlow*, No. 25-CV-10602-SVK, 2026 WL 485490 (N.D. Cal. Feb. 20, 2026); *Gao v. Mullin*, No. 25-CV-01479-SVK, 2026 WL 948665 (N.D. Cal. Apr. 8, 2026); *Behdin v. Edlow*, No. 26-CV-00566-SVK, 2026 WL 1031079 (N.D. Cal. Apr. 16, 2026); *Narayan v. Edlow*, No. 25-CV-11000-SVK, 2026 WL 1050227 (N.D. Cal. Apr. 16, 2026); *Meschi v. Edlow*, No. 26-CV-01993-AGT, 2026 WL 1157151 (N.D. Cal. Apr. 29, 2026); *Yousefisahi v. Edlow,* No. 25-CV-09728-LJC, 2026 WL 1388704 (N.D. Cal. May 18, 2026). Indeed, the Court finds that there is a material difference between reviewing a final order for immigration benefits—which is discretionary and not reviewable—and reviewing whether the Government is performing its mandatory duty to act on an application, rather than delaying such

United States District Court
Northern District of California

action indefinitely. *See Gao*, 2026 WL 948665, at *3.

The Court is further persuaded by the recent order issued in the U.S. District Court for the District of Rhode Island, in which the district court thoroughly addressed the same jurisdiction-stripping provisions and found that they did not deprive the court of subject matter jurisdiction to address pace of adjudication. *Dorcas Int'l Inst. of Rhode Island v. United States Citizenship & Immigr. Servs.*, No. 26-CV-132-JJM-PAS, 2026 WL 1622708, at *13-16 (D.R.I. June 5, 2026), *judgment entered,* No. 26-CV-132-JJM-PAS, 2026 WL 1695954 (D.R.I. June 11, 2026). More noteworthy, is the court's observation that "Section 1252(a)(2)(B)(ii)'s jurisdictional bar applies only to agency determinations made discretionary by statute, and not to determinations declared discretionary by the agency itself." *Id.* at *14 (citing *Kucana*, 558 U.S. at 249–52). Thus, while the agency may have absolute discretion in the ultimate determination of whether to grant or deny an application, it is not shielded from judicial review on whether it must render a decision.

Accordingly, the Court has subject matter jurisdiction to review pace of adjudication claims, and Defendants are not entitled to summary judgment on this basis.

**B. The Court also has jurisdiction to review changes to agency procedure in response to the recent policy memorandum.**

Next, Defendants argue that the petitions are on hold as USCIS updates its procedures to comply with a recent policy memorandum enacted in response to an executive order and presidential proclamation, and that the Court lacks jurisdiction to review USCIS's process for implementation and any attendant delay in reviewing petitions as these changes are completed. (Defs.' Mot. at 5-6.) In sum, Defendants argue that these claims are unreviewable because they are "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2). (Defs.' Mot. at 6-7.)

In opposition, Plaintiff argues that a policy change does not strip the district court of subject matter jurisdiction to review the agency's unreasonable delay in adjudicating a petition. (Pl.'s Opp'n at 20.) Indeed, the Ninth Circuit has explicitly held that the APA applies to an agency's rule implementing an executive order even "when the executive order gives agencies no policy discretion." *State v. Su*, 121 F.4th 1, 15 (9th Cir. 2024) (citations omitted). To find otherwise, would both "def[y] fundamental principles of administrative law" and "conflict[] with

the plain language of the APA and existing precedent" *Id.* at 15. The Ninth Circuit observed that the find otherwise would "shockingly allow Presidents to insulate any desired rulemaking from judicial review with the single stroke of an executive pen." *Id.*

Accordingly, the changes to agency procedure in response to the policy memorandum do not deprive the Court of subject matter jurisdiction in this matter, so Defendants are not entitled to summary judgment.

### C. Application of the *TRAC* Factors

Finally, Plaintiff moves for summary judgment on grounds that the delay in adjudicating the Petitions is unreasonable under the *TRAC* factors. (Pl.'s Opp'n at 9.) In determining whether an agency has unreasonably delayed an action, the Ninth Circuit has adopted the *TRAC* factors as follows:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001) (quoting *Telecommunications Research & Action v. FCC (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984)). "In evaluating the *TRAC* factors, courts routinely afford the most weight to the first and fourth factors." *Ahmed v. United States Dep't of State*, No. 23-cv-02474-SVK, 2024 U.S. Dist. LEXIS 14461, at *17 (N.D. Cal. Jan. 26, 2024) (internal quotation omitted). Here, Plaintiff fully addresses each factor in his cross-motion. (Pl.'s Opp'n at 10-12.)

In opposition, however, Defendants merely argue that "the Court does not need to reach the *TRAC* analysis because it lacks jurisdiction to review the claim and thus engage in such analysis." (Defs.' Reply at 4.) Then, instead of meaningfully addressing the TRAC factors, Defendants string cite several cases in support of the argument that the language in 8 U.S.C. § 1571(b) is "merely precatory." *Id.* (citing *Orkin v. Taylor*, 487 F.3d 734, 739 (9th Cir. 2007))

(other citations omitted). In giving Plaintiff's arguments short shrift, Defendants did not meaningfully address the *TRAC* factors in opposing Plaintiff's cross-motion for summary judgment, and the Court, therefore, finds that any argument to the contrary is waived. *See Linder v. Golden Gate Bridge, Highway & Transportation Dist.*, No. 4:14-CV-03861 SC, 2015 WL 4623710, at *4 (N.D. Cal. Aug. 3, 2015) (quoting *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment ...."). Moreover, the Court notes that Defendants declined to address the TRAC factors in their initial motion despite previously arguing this point of law on the merits, and ultimately prevailing, in similar cases. The consequence of the Government's tactical decision to rest solely on unmeritorious jurisdictional arguments is that Plaintiff's motion for summary judgment must be granted as unopposed.

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' motion for summary judgment and GRANTS Plaintiff's cross-motion for summary judgment on both the APA and Mandamus claims.

The parties are ordered to meet and confer regarding the timeline for the adjudication of the I-730 petitions for Plaintiff's spouse and three minor children, and they shall file a stipulation within 14 days of this order.

Additionally, Plaintiff is separately ordered to file a proposed judgment within 14 days of this order.

IT IS SO ORDERED.

Dated: July 29, 2026

KANDIS A. WESTMORE
United States Magistrate Judge